## UNITED STATES v. GIN FUNG.

### (Circuit Court of Appeals, Ninth Circuit.   February 5, 1900.)

### No. 498.

ALIENS—EXCLUSION—DECISION OF COLLECTOR—REVIEW BY COURTS.

> Under the act of August 18, 1894 (28 Stat. 390), providing that, where an alien is excluded from the United States under any law or treaty, the decision of the appropriate customs or immigration officer, if adverse to his admission, shall be final, unless reversed on appeal to the secretary of the treasury, the circuit court has no jurisdiction of habeas corpus proceedings brought by an alien excluded by the collector of the port to determine his right to land, since the collector's determination is not reviewable by the courts, but only on appeal to the secretary of the treasury.[1]

Appeal from the Circuit Court of the United States for the District of Oregon.

Application for a writ of habeas corpus in behalf of Gin Fung, alleged to have been unlawfully restrained, by order of the collector of Portland, as a Chinese laborer.   From a judgment ordering the discharge of petitioner (89 Fed. 153), the United States appeals.   Reversed.

John H. Hall, U. S. Atty.

Charles J. Schnabel, for appellee.

Before McKENNA, Circuit Justice, and ROSS and MORROW, Circuit Judges.

PER CURIAM.   The respondent alleged in his petition that he had been a merchant in the United States, and went to China with the intention of returning; that on his return "Hon. Thomas J. Black, United States custom inspector of the district of Oregon, on the charge of being a Chinese laborer and unlawfully within the United States," after a certain hearing ordered him to be deported to China, and thereafter he was delivered to the custody of John Doe (the master of the steamer Braemar) for the purpose of carrying out said deportation order, against his will and contrary to the laws of the United States.   A writ of habeas corpus was prayed for and issued.   The master of the steamer, whose real name was Edward Porter, answered by one James W. Hare, and denied that he unlawfully deprived petitioner of his liberty, and alleged that the petitioner took passage at Hong Kong for Portland, claiming to be a merchant and entitled to land in United States; that upon investigation the right to land was determined against petitioner by the collector of customs; that said Edward Porter had no authority to land petitioner; and that he was not detained for any other cause or pretext than above stated.   The reply to the answer set out the facts which were claimed to constitute the peti-

---

[1] As to citizenship of Chinese persons, see note to Gee Fook Sing v. U. S., 1 C. C. A. 212, and, supplementary thereto, note to Lee Sing Far v. U. S., 35 C. C. A. 332.

tioner a merchant, and denied an investigation by the collector, and denied that an order of deportation was made, except a verbal one, and alleged the irregularities found by the referee hereinafter mentioned. The case was referred to a referee to take testimony, and he reported, in effect, that the examination and hearing before the inspector were not completed, and that there was a postponement of the hearing from July 8 to July 9, 1898, at 10 o'clock, and before the latter time the petitioner was placed on board the steamer Braemar by the collector, and that said steamer sailed from Portland to some port in the empire of China between the hours of 9 and 10 in the forenoon of said July 9th, notwithstanding he knew that the ship would sail with the petitioner before said time. It was further found, substantially, that one of the witnesses who was to be produced was "intentionally or otherwise" frightened from testifying by one of the Chinese inspectors, and that petitioner was of the "exempted class," and that no consideration whatever was given his right of domicile, but, "the whole matter," to quote the finding, "seems to have been conducted in a manner to accommodate the master of the steamer Braemar and her agents, to give her quick departure, which seemed to be of a good deal more importance than the rights of this petitioner."

A specific reference to the Chinese exclusion acts is not necessary. By them, it may be said, Chinese laborers are excluded from the country, and Chinese merchants once resident here may, under certain conditions of identification, be permitted to land. The petitioner claims to have been such a merchant, and the circuit court found that he was.

By the act of August 18, 1894, it was enacted that:

"In every case where an alien is excluded from admission into the United States under any law or treaty now existing, or hereafter made, the decision of the appropriate customs or immigration officer, if adverse to the admission of such alien, shall be final, unless reversed on appeal to the secretary of the treasury." 28 Stat. 390.

It was decided in Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146, and reaffirmed in the case of Lem Moon Sing v. U. S., 158 U. S. 538, 15 Sup. Ct. 967, 39 L. Ed. 1082, that the jurisdiction to determine the character of an alien and his right to land in the United States was with the collector of the various ports, and that such determination was not reviewable by the courts, but reviewable only on appeal to the secretary of the treasury. It follows from those decisions that even if it be conceded that jurisdiction of the present case was properly entertained, under the facts as finally found, the judgment was too broad. If it was an excess of power for the collector to deport petitioner without a hearing or pending a hearing, jurisdiction to hear and adjudge could not be assumed by the circuit court. Its power might have been properly exerted to arrest the consequence of the collector's illegal act. It could go no further. The jurisdiction to determine the right of the petitioner to land still remained with the collector and the secretary of the treasury, and we cannot but believe that the collector, persuaded by the judgment of the circuit

court of the improvidence of his action, will review it, and give to the petitioner an impartial hearing, and opportunity to establish his rights. The judgment is reversed.